Case 16-6428 Eagle Supply and Manufacturing v. Bechtel Jacobs Company LLC Oral argument not to exceed 15 minutes per side and when ready Mr. Samples for the appellant May it please the court. Good morning, your honors, and thank you for the court's time. I would like to reserve five minutes for rebuttal. My name is Lachlan Samples. I'm from Smith, Curry & Hancock and I'm here on behalf of the appellant Bechtel Jacobs Company. Now there are numerous issues that are raised in the briefing, but they really boil down to three key points. Point one is the contract interpretation issue. Point two is dealing with bad faith, which stems in large part from the contract interpretation. And point three is a concern over whether the district court performed an independent evaluation of the findings of fact and conclusions of law as is evidenced by several unsupported citations as well as clear contradictions between what is cited and what the record actually supports. And I believe that stems not from any real failing of the district court so much as adopting a MACTEC case that at least I believe the appellee is going to present as a comparable case. But what I'd like to deal with first is the actual contract interpretation issue. Now that, of course, is subject to a de novo review. What the district court found was that in this government contract, SC15, which governs payment, precluded any reliance on the limitations of fund clause or on GC6, which we believe is an express pay-if-paid provision. Now we believe that's important because under the Tennessee Prompt Pay Act, which provides for attorney's fees and interest, there's a carve-out for an express condition precedent. Tennessee Supreme Court in Koch has recognized that while disfavored, they will enforce pay-if-paid clauses as an absolute norm. Is it Tennessee law or is it federal contracting law that tells us what to do with pay-if-paid clauses? For pay-if-paid clauses, Your Honor, it would be state law. The contract provides the law of federal government contracting applies unless or if it's silent. If it's silent, then Tennessee state law applies. Why is it? I mean, you're Bechtel. You get to do what you want. But I guess I'm surprised you don't use federal contracting law in this area because there's quite a bit of it about pay-if-paid clauses. Your Honor, there is, and, of course, there's a federal pay-if-paid act. But what it says is it establishes a floor, and if states want to come in with additional requirements, then the state pay-if-paid can supplement it. It was raised early in briefings and a motion to dismiss was denied based on that aspect. Upon further evaluation, we do believe that the Tennessee pay-if-paid act would apply. And it's kind of tough on pay-if-paid clauses, Tennessee laws. In other words, it seems to be, correct me if I'm wrong, a presumption against them. Your Honor, there is, however, Tennessee is in the minority in that it will still enforce an express pay-if-paid provision. Another example would be Florida, two courts of appeals in Florida, the JJ. Right, you have two presumptions in Tennessee against you, disfavored, and then there's a risk of nonpayment lies with the prime contractor, not the subs. And then if you look at the payment clause, and this is what the district court said, you look at the payment clause, which is GC 15, right? SC 15. SC 15, I'm sorry. It says that within 30 days of receipt of an invoice, contractor will pay subcontractor. It doesn't put any kind of condition precedent. And then, just later in that same clause, it says contractor may, as a condition precedent to any payment, require the subcontractor to submit. So you knew how to use the language. You didn't use it in that clause, and that's the payment clause. Your Honor, but there I would disagree, because if you go to GC 3, which is dealing with claims, claims specifically carves out invoices. And the importance of the differentiation there is that invoices are agreed-to amounts between the parties. And we'll set aside for a moment that EGLE never submitted an invoice for the two REAs that are before us today, which are the combined changes and the waste exceedance. That fact is undisputed. EGLE has not invoiced under either. Thus, SC 15 never was triggered. But setting aside that, under SC 15, it only deals with invoicing. Invoicing is expressly carved out under GC 3, which deals with claims. It sets forth a process for resolving disputed claims. What do you mean it only deals with invoicing? In what sense? Let's assume they submitted an invoice. Are you saying then under that circumstance you would be required to pay, irrespective of whether the government had provided you the money? No, Your Honor. I'm saying that by the time you get to invoicing, that the government has already, as a conditioned precedent, either made the funds available or promised to make the funds available. And you have to read SC 15 in context with the payment application, which directs you to a specific form. I believe it's Exhibit 7 to the contract, Form A-1 and A-2. And Form A-1 and A-2 incorporate the limitation of funds clause as well, because the importance is that the money is flowing from the Department of Energy or the federal government through Bechtel Jacobs and then after 2011 through UCOR, who takes a percentage markup, and then down to the subcontractors for this work. And BJC can only allocate funds to contracts based on first receiving or being promised those funds from the Department of Energy. And that's how the 21 other REAs were resolved on this case. That's how the settled claims were also resolved. The parties were able to come to an agreement. The claims were presented to the Department of Energy, and the Department of Energy said we either approve this or we don't approve it. Funds are either promised or actually provided, and then the subcontractors. What would happen if you were right about all of this? Would they be allowed to submit this now and then go to DOE? I mean, what if we otherwise agree with the district court? Can we just back into that and solve that problem today, or is it too late for that? Your Honor, I believe it's too late for one reason being that in 2008, the Department of Energy issued a stop payment directive to BJC. And I think we have to separate the issue of should EGLE be paid versus who is ultimately responsible for the payment. And who's ultimately responsible under GC6 and SC37, as well, Your Honor, as is SC36, which says that to the extent there's preexisting conditions or unknowns, then the subcontractor will be paid, but only to the extent the DOE first pays BJC. Under that scenario, the money comes from the DOE, and if the DOE doesn't pay, which is what happened here, or the DOE does not promise to make payments, which is also what happened. When there were negotiations between Bechtel and EGLE about these equitable adjustments, did you respond by saying, well, we can't do this without DOE? Or did you say, you can claim all you want, but unless you get earmarked funds from DOE, forget it? Yes, Your Honor. There were numerous discussions, as were testified to by Rayburn Josie, who was UCOR's general counsel, and Tom Berwinkle, who was one of the senior Bechtel people during the performance of it, about that topic and about going to the DOE. In fact, this case was settled as between EGLE and BJC, subject only to the DOE approving the settlement, which they refused to do. And that was an express condition in the settlement, and I believe that was in 2014. What happens if you lose? Are you going to sue DOE? Your Honor, that's a very interesting question. It doesn't seem like you'd have good grounds. There would be grounds to go after the DOE for the nonpayment, and it's more complicated by the fact that there was a transition agreement between Bechtel Jacobs Company and UCOR, who was the takeover contractor, and how this lawsuit was going to be handled. What happens if you win? What's the flip side? How much of this, does it all go away, and EGLE has to go after DOE if you win the pay if paid question? No, Your Honor, because we think in fairness with change order 2, which was what upgraded the security, actually kept the security the same, L clearance, that with that directive coming through, EGLE should be paid something. And that was always the negotiation. There's been no dispute. How do they get paid something if there were no DOE funds? Because if the amount satisfies TINA, which is not just TINA as cited by the district court, which is the portion talking about the actual certification that's signed, but TINA 15-2 table, which lays out all of the requirements for submitting these, then we believe the DOE will allocate funds from our conversations with them. But what happens if they don't? Then you don't have to pay. Well, then, Your Honor, we're into an issue of what does the contract say in terms of going through the entire disputes provision? And my reading of the contract and reading it as a whole says that once the district court enters an amount, that amount is what DOE should ultimately fund. So this one that you're conceding, there's something they're entitled to. What rough amount is that, rough? $2.1 million, Your Honor, plus interest from the date of the judgment. And we would ask interest be at 5.25 or 5.5 percent, depending on the actual revision date, as the Tennessee Finance Commission sets. But no attorney's fees? No, Your Honor, no attorney's fees. Attorney's fees are only allowed if there's bad faith found. And bad faith is an interesting concept. What's the rough differential, $3 million versus $10 million or $12 million? I can't remember what it is. Your Honor, I believe it was $12 million. Would it be about $3 million versus $12 million? But over half of that is interest, well over half of it. I got it. That's why I went from 2 to 3. Yes, Your Honor. I want to go back to your discussion about SC15 for a second to just make sure that I understand. You're contending, and I think you answered in connection with Judge Tappar's question, that this doesn't apply because there wasn't an invoice? Your Honor, that is one. Is that basically what you said? That's a threshold. So there were these REAs that were submitted. Yes, Your Honor. For some reason, correct me if I'm wrong, I thought that you couldn't invoice it until you came to an agreement on what the proper adjustment was for the REA. You're correct, Your Honor. So what that would say then is that you could simply never have to pay because there wasn't an invoice because you didn't reach agreement on what they were seeking as an equitable adjustment. That just doesn't sound right. Unless you consider the balance of the contract, which lays out how you handle disputed claims, which is what these were. These were disputed claims. The invoicing process are for amounts that match up with pay request items that EGLE had provided based on their proposal. They did not cover the ads for the REA. So when an REA would be approved, it would be added to the pay request, and then it would be, again, that's based on the promise of funding or funding by DOE, and then EGLE would be paid. So the contract envisions these equitable adjustments, and you admit that you made changes that would justify an equitable adjustment, but you simply can't or refuse to agree on the amount. So, therefore, there's never an invoice. So, therefore, you can rely upon this pay if paid concept and never pay. Does that make sense? I understand what you're saying, Your Honor. I see my time has run, but I'd like to respond to your question. The pay if paid defense comes into account because BJC's assets per GC6 aren't at issue. The invoicing provision only deals with amounts that the parties have agreed to. For the disputed amounts, there's a chain you have to go through that starts at GC3, which deals with claims. But you don't have to have the money from the government if the parties have agreed, but you have to have the money from the government if the parties doesn't agree. That almost sounds backwards. We still have to have the money from the government if the parties agree. If there's invoicing, then that means that the money has been allocated already to that contract because it's either base scope work or it's an approved REA. And an REA is not approved until there is funding that has been made available by the Department of Energy. So where do we find in the record this concept that there would not be an invoice unless the money had been set aside? Is that provided by contract or just by course of conduct? Your Honor, it's in the contract. And the way you get there— Just tell me what section to look for. There's several sections you have to look for, Your Honor, but GC's three and four claims and disputes. But perhaps the most important provision is SC37, which is the limitation of funds clause, which says that if EGLE is going to exceed the allocated funds for any given year, and there were three years that were given, then EGLE bears the burden of providing notice that it's going to exceed the limitation of funds amounts. And then it presents BJC with a chance to respond, which is really to go to the DOE and figure out how that's going to play out. I'll look at it. I've got SC37 in front of me. All right. You'll get your full rebuttal. We'll hear from your friend on the other side. Mr. Corrigan, I think? Yes, Your Honor. Okay. Good morning, Your Honors. My name is Brian Corrigan with Kilpatrick Townsend in Atlanta. I represent EGLE. I'd like to go about my argument covering four topics. First of all, I'd like to address issues that were raised by Bechtel Jacobs, which we believe are waived in their reply brief, or I would like to clarify in terms of record support. Next, I'd like to go to the pay when paid issue. Third, I'd like to talk about the bad faith. And then fourth, I'd like to talk about the interest rate under the Prompt Pay Act. First of all, in the Bechtel Jacobs reply brief, they argue that the Glassberg and performance evaluation, this deals with the issue of bad faith, was not properly admitted into evidence. In fact, Plaintiff's Exhibit 87 at the appendix 1369 through 1377 was in fact admitted into evidence without any objection. And the record identification is 169 at page 2231. Secondly, Bechtel Jacobs has waived its SC-37 argument that it's put before the court. It never raised that issue in its brief. As a matter of fact, in its brief, it actually references an SC-37 notice letter that was provided by Eagle to Bechtel Jacobs. And I asked the court to take a look at that letter because it's not only significant in terms of its content, but it's significant in terms of the history it lays out with respect to the various efforts it made. It's at appendix 632. It's a March 24, 2006 letter cited by Bechtel Jacobs in their brief as satisfying SC-17. And what that letter does is it indicates to Bechtel Jacobs that there will be an overrun of the amount that's been allocated to this subcontract. And Bechtel Jacobs never did what it was supposed to do, and that is put together a funding plan that would satisfy Eagle so that Eagle could move forward with the project. As a matter of fact, a month prior to that, what Eagle did is told Bechtel Jacobs, we believe this contract is going to run over the allocated amount. We need to sit down and figure out how we're going to get modifications issued so we can get paid and move forward. And if we don't you can keep going with this. You're starting pretty far into the weeds on this. So I want to make sure I'm understanding what you're saying. I don't know if this is the right way to go. But are you saying – it's one thing not to make an argument that you forfeited it. You didn't raise it below and suddenly you're raising it under your reply brief, and courts don't like that. I will say it's – when it's about a provision of a contract and one whole part of this dispute is what the contract means, it's pretty hard for us to keep our eyes from gazing over the whole contract. But are you now making the point that they not only didn't raise SC-37, but they argued – they made arguments inconsistent with what they're saying now? Absolutely, Your Honor. And I'm sorry I wasn't clear. But SC-37 – They're switching their position is your point. Yes. SC-37 – they're taking the position in their reply brief that there was no compliance with SC-37. In their opening brief they actually refer to – All right. Well, we'll sort that out. Words are what the words are. How about we go on? Okay. And the other point I was trying to make in conjunction with that is a month prior to that letter, on February 16th of 2006, EGLE said to Bechtel-Jacobs, we're entitled to substantial equitable adjustments under this contract. We're going to run over. This deals with the SC-37 argument. We need to sit down and get modifications to the contract or we're going to have to stop work. Bechtel-Jacobs' response to that was, if you stop work, we're going to terminate you for default. Now, Bechtel-Jacobs stands in front of the court and says, we had no idea that this contract was going to run over. We've been prejudiced. We can't get reimbursement from the DOE. That's totally inconsistent. All right. Well, that's important. If that's true, that seems like a problem. Let's talk about the – they call it pay if paid. I mean, I love this. And you call it pay when paid. That's great because you see it as a timing issue, so when is a better word. But whether it's pay if paid or pay when paid, it's a pretty serious point. It is, Your Honor, and it's absolutely – there's nothing in the text of the two provisions that they cite, which are GC-6 and SC-37, that use the language condition proceeding. There's no language whatsoever. The subcontractor shall make payments under the subcontract from funds advanced by the government. They don't have to use the magic language, do they? Yes, they absolutely do, Your Honor. That's what all of these pay if paid cases talk about. That's what the Dyer case talks about, and that's what the Tennessee Supreme Court case says. They both say that you have to have unequivocal express condition proceeding language in the text of the contract. Okay, but you don't – that sounds like condition proceeding language to me, which says contractors shall make payments under the subcontract from funds advanced by the government. If they're not advanced by the government, you don't have them. No, Your Honor. As a matter of fact, in the Dyer case, what the contract provision in the Dyer case said, that the general contractor will only make payment to the subcontractor five days after receiving payment from the owner. The court said that wasn't good enough. This court said that wasn't good enough. You have to have express condition proceeding language that makes it clear that the subcontractor is assuming the risk of nonpayment or insolvency of the owner. And that language, that talismanic language, condition proceeding, is language that courts universally seize upon as conveying. Is your take that Tennessee law is controlling here? Yes, Your Honor. And not federal contracting law? Yes, Your Honor. It does, and I don't believe there's any disagreement on that. Okay. In any event, Your Honor, let's assume it was condition proceeding language. Bechtel-Jacobs would be stopped from arguing that those conditions proceeding had not been satisfied because Bechtel-Jacobs' conduct actually prevented the occurrence of those conditions proceeding. As Judge McKeague pointed out, under this contract, Bechtel-Jacobs' position is, you can't invoice under the contract, under the subcontract, unless we have agreement on an REA. But the district court found that because of the bad faith conduct of BJC in negotiating these REAs and initiating a DOE investigation, that the REAs were never resolved and never presented to the DOE. Also, the position that Bechtel-Jacobs is now taking is totally inconsistent with the position that they took in the pretrial order. In the pretrial order, Bechtel-Jacobs said, and really what this case is about is Bechtel-Jacobs is looking for cover. What they're saying is, we've got to get a judgment against us, so we've got cover. We can go to the DOE and say, you've got to reimburse us. These are legitimate costs. Can you go back to the pretrial order and explain what you were going to? Yes, Your Honor. In the pretrial order, Bechtel-Jacobs says that EGLE is entitled to be compensated for any costs that are determined in this judicial action they are entitled to under the contract. And they specifically say that once EGLE is deemed to be entitled to recover those, that they then become a change order to the subcontract and are due and payable to EGLE. That's right out of the pretrial order. That's the position they've taken. But are they saying they're due and payable from the DOE? They don't say that. They say once there is a judicial determination, then it is due and payable. They're entitled to a change order. EGLE's entitled to a change order. But you're essentially saying that by virtue of that, which seems like an obvious statement to make, that they've then waived any of these other defenses that they're going to make as to whether it's judicially determinable. That doesn't make sense. That's the position they've taken, Your Honor. That's what you're reading into the position they're taking. No, Your Honor. If you look at the pretrial order on page 16. This is your time and it's running. And we're going to just suggesting again maybe we get to, we'll look at that. But maybe we ought to get to what we're talking about. Just tell us the page we'll look at. We looked at page 16. It says that if EGLE disputes the DOE's refusal to fund and approve its claims, that it may file suit to judicially determine the amount owed, if any, and such award will be incorporated into the contract as a change, thus entitling EGLE to payment. All right. So how about the TPPA, you know, 10% versus 5 point something percent? I guess my first reaction was a little negative towards the district court's decision on somehow 10% being vested. So, yeah, defend the defender. The Tennessee Prompt Pay Act provides that if the district court or the trier of fact determines that there was bad faith in the discharge of the subcontract, that the parties, the plaintiff is entitled to prejudgment interest at a specified rate. The specified rate actually is the post-judgment interest rate statute in Tennessee. At the time that the contract was entered into, which was in 2006, I believe, the ‑‑ We've seen a lot of prejudgment interest cases. I haven't seen too many where you look at the earlier one. I usually thought it was at the time of judgment. No, the prejudgment interest accrues or the right accrues in the right vest at the time of the breach of the contract. At the time of the breach of the contract as well as the date that the contract was entered into, predated the adjustment of the interest rate from 10% to 5.25%. Tennessee Supreme Court says that when parties enter into a contract, that the laws that are in effect as of the date of the contract are incorporated into the contract. Bechtel Jacobs hasn't challenged that. They've waived any challenge to that. What if the law they've incorporated is procedural or remedial? But it's not procedural, Your Honor. It's only procedural if it establishes some sort of process or procedure. If a substantive right is vested, then the case law in Tennessee specifically says that the statute only operates prospective. It does not operate retroactively. Is there any possible difference here between the rate that you get paid from the time you filed the complaint to the time you filed judgment? That would be the prejudgment interest. And then a different rate from the time of the judgment to whenever you get paid? Yes, the post-judgment interest rate is different, is my understanding. Okay, so you're only seeking the 10% up to the date of the judgment. Yes, Your Honor. Okay. But that's serious money here, isn't it? It's very serious money. The other point I'd like to make, Your Honor, not only – there's no case law that Bechtel Jacobs has provided that is consistent with their position. That there ought to be – Is there any law that you've provided that uses the term vested when it comes to prejudgment interest? No, Your Honor. We have not. But the court also says in the Board of Professional Responsibility case, which is a Tennessee Supreme Court, that even if a statute is remedial, if the retroactive application would produce an unjust result, then it is not applied retroactively. How would it be unjust? Because it's depriving Bechtel – it's depriving EGLE of the interest that it earned based on the statutory enactment that existed as of the date that the contract was entered into, as of the date that the breaches occurred, and throughout a substantial period of time where EGLE was without these funds. Ten percent is serious money. I mean, Warren Buffett would be thrilled with that. I think he thinks eight is awesome. So I don't know. This is prejudgment interest? You're turning it into this great investment vehicle. Well, Your Honor, the prejudgment interest rate in Tennessee – the regular prejudgment interest rate in Tennessee is ten percent also. And so in that, under Tennessee law, that – Still? Yes, Your Honor. To this day? So when this five percent thing came in, that didn't change as well? No, Your Honor. The 5.25 percent is post-judgment interest rate under Tennessee law. Okay, keep going. Do you agree that the Prompt Pay Act does provide for relief that you can obtain? Absolutely, Your Honor. Yes. Because remedial statutes include causes of action where you can – if things are effectuated, wrongs are addressed, and relief obtained. But a remedial statute, as the law in Tennessee is articulated, is procedural in nature. It doesn't deal with a vested right. It doesn't deal with – I'm just quoting from two Tennessee cases. The other point I'd like to make, Your Honor, is that the Tennessee prejudgment interest rate is ten percent outside of the Prompt Pay Act. So if the – and that lies within the discretion of the trial judge to make a determination as to whether prejudgment interest should be awarded. And I would argue that the trial judge's determination that Bechtel-Jacobs conducted itself and breached the contract in – Applying the Prompt Pay Act, right? Pardon me? She was applying the Prompt Pay Act. She was applying the Prompt Pay Act. Are you making the point she has – if you lose under that on remand, she has the authority to alternatively impose it under this freestanding? Absolutely, Your Honor. And that was argued below to her? Why didn't she rely on that and spare us – I don't know if it was argued below to her because we were relying on the Prompt Pay Act. She never references it in her opinion that I'm aware of. She does not. She does not. But that is the point I'm making. Now the forfeiture shoes on the other foot, I'm afraid. You've got to be kind of careful about your sort of waiver arguments here. Well, what I'm saying is I believe that the district court did make a determination that would satisfy a finding required for prejudgment interest. All right. I think we got it. Thanks so much for your argument. We appreciate it. Mr. Samples, I think you have some rebuttal time. Thank you. I want to start off on the comment that no court has enforced this type of similar language in terms of the pay if paid clause. The Florida Court of Appeals in J.J. Shane found that language that said subcontractor is relying upon the financial responsibility of owner in performing the work. It is understood by subcontractor that payment for the work is to be made from funds received from owner by contractor in respect to the work. They found that created an enforceable condition precedent to payment and said until the funds were made available to the contractor. Does Florida law have the same presumptions against this that Tennessee does? Yes, Your Honor. Almost identical presumptions to what Tennessee has. There's another case that's similar, Robert F. Wilson, also from Florida, addressing the issue. Finding that this type of language is enforceable. Now, I want to go to the bad faith for a minute because Mr. Corrigan said that a lot of this was driven by the bad faith, and I agree completely that a lot of the district court's decision was driven by the bad faith finding. In the brief are numerous instances that are delineated of problems with the bad faith finding, some of the most concerning of which are citing testimony as a basis for a finding of fact or a conclusion of law where the district court excluded the testimony or sustained an objection, and yet it ends up being cited in support of the finding. Equally concerning would be the lengthy discussion about the pre-contract negotiations between Bechtel Jacobs Company and Eagle Supply and Manufacturing, where Eagle came up after BJC said, you know, we want to award to Eagle. BJC said, all right, cut your price. Eagle cut their price by $400,000. Now, they could have walked away. They could have said this contract isn't worth it. Nobody held a gun to Mr. Walraven's head, the head of Eagle, and said you have to sign the subcontract. But they did. And once they did, all those pre-contract negotiations are irrelevant. There's a merger clause in this contract. There's an integration clause. And yet the district court said that that pre-contract negotiation provided grounds for bad faith. Bad faith in Tennessee has to be a knowing or reckless disregard for contract rights. Eagle had no contract rights at that time. So once you put it in context, now what you're left with is really a performance evaluation that was done of Mr. Glassberg, an individual who wasn't a BJC employee, who had no authority over REAs, and who unfortunately was deceased at the time of trial and unable to defend himself. The only other remaining ground is the whole DOE IG investigation. And the record, I think, could be cleared up a little bit on what happened. A former Eagle employee, and this is undisputed, a former Eagle employee by the name of Jennifer Wellman came to BJC and said that her time for previously paid REAs had been overbilled by Eagle. Now under the contract, under I believe it's SC38, BJC is obligated to report fraud to the DOE IG. They did. They followed the law. They followed their contract. They reported the fraud. And that was the end of BJC's involvement until after the DOE on its own convinced a grand jury to issue a subpoena. Eagle responded to the subpoena, at which point the DOE approached BJC and said, we'd like a review team to look at these documents for already settled REAs and tell us if there's overbilling. And the undisputed evidence at trial said that there was $220,000 in additional. Are you responding at all to the forfeiture argument that was made about your SC37 point, that you've not raised that and, in fact, worse consistent with things you'd argued before? It's on page 13. Do you want us to know on that? SC37 is addressed in our brief on page 13. It was addressed at length in our findings of fact and conclusions of law. So the opening brief when you say this? Yes, Your Honor. The opening brief. SC37 is discussed at length. One page? Page 13? No, Your Honor. It's on numerous pages. OK. It starts on 13, OK? Yes, Your Honor. And it's discussed, again, in the context of what the obligations are. SC37 is brought up, and then there's lengthy discussions, both in our initial brief and our reply brief, on what the impact of a limitation of funds clause is and if it applies to subcontractors. And under international science, it does apply—I apologize. Under the Eastern District of Virginia case, it does apply to subcontractors. Are you talking about page 13 of your brief in front of us? Yes, it should be appellant's corrected brief, page 13. And that's record page 13. It's page 4 if you're going by the pages on the bottom. You mean the brief below? No, Your Honor. I said record. It's the file stamp pages that are applied when it's electronically filed. It's our page 4 at the bottom. It's page 13 stamped in the upper right-hand corner. And it's addressed at numerous instances. So for those reasons, we would ask that the court overrule the district court. We have admitted to $2.1 million plus interest for the combined changes, but find that nothing else is owed and there was no bad faith. Thank you, Your Honors. All right. Thank you to both of you for excellent briefs and oral arguments. It's a tough case, at least for people that don't have the pleasure of working in this area. So congratulations to you on your expertise. The case will be submitted and the clerk may adjourn the court. Thank you. This honorable court is now adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.